## A04A0540. INGRAM v. THE STATE.
### (601 SE2d 736)

ADAMS, Judge.

Gary Alexander Ingram appeals from his conviction and sentence for theft by receiving stolen property.

Construed in favor of the verdict, the evidence shows that on November 29, 2001, a 53-foot trailer valued at about $40,000 was stolen from a freight company known as Howell's Motor Freight. The police were immediately notified and given the vehicle identification number (VIN). In April 2002, Steve Winters, a driver for Howell's, saw the same trailer across the street at a neighboring business and determined that the VIN matched that of the stolen trailer. The trailer also still bore Howell markings and identification numbers, including Howell mud flaps that had been turned around to conceal the markings. Winters also saw Howell stickers on the trailer showing the telephone number of Howell's Motor Freight, and he found the registration and insurance card for the trailer in a box located on the trailer. Other Howell markings on the trailer had been removed. Winters called the police, then questioned Melissa Donahou, who was in the process of loading the trailer at the neighboring business. Donahou was employed by Ingram and was loading the trailer on his behalf.

Lieutenant Wilford Norwood of the Clayton County Police Department arrived on the scene. Norwood determined that the trailer belonged to Howell's Motor Freight and that the license tag on the trailer belonged to another vehicle that had been reported stolen. He spoke with Donahou who offered to call Ingram on her phone, and she handed the telephone to Norwood. At trial, Norwood testified that when he later heard Ingram in court at a preliminary hearing, he recognized his voice as that of the person to whom he spoke on the telephone. In addition, the person on the phone identified himself as Ingram. When asked about the truck, Ingram said that he had found the trailer abandoned and vandalized somewhere in DeKalb County, that he took it for the purpose of safeguarding it until he could locate the owner, that he put a license tag on it, and that in the meantime he was using it for his own business to make money. Ingram told essentially the same story at a preliminary hearing, which included an admission that he was in possession of the trailer.

When the trailer was returned to Howell's Motor Freight, Donahou asked to keep the stolen tag. She said that there was no need for Howell's to keep the tag if they got their trailer back.

At trial, Ingram told a somewhat different story. He claimed that he got the trailer after he received a call from a tree-cutting company to come and remove a trailer that was blocking some trees that

needed to be cut down. He also claimed that he could not find identifying marks on the trailer that would aid him in locating the owner. He admitted that he never called the police about acquiring the trailer.

The jury returned guilty verdicts against Ingram for theft by taking and theft by receiving stolen property. Prior to sentencing, Ingram moved to set aside the verdict on the grounds that it was illegal because the two verdicts were mutually exclusive. See *Thomas v. State*, 261 Ga. 854 (413 SE2d 196) (1992). In response, the trial court vacated the verdict of theft by taking and then sentenced Ingram for theft by receiving.

1. Ingram first contends that the evidence was insufficient to support the verdict for theft by receiving. OCGA § 16-8-7 (a) defines theft by receiving stolen property:

A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.

The evidence was easily sufficient to show that Ingram retained the trailer knowing that he did not own it and that he did not intend to restore it to the owner. He kept it and used it for two months without making any attempt to contact the police or the owner, even though the owner could have been identified from the remaining markings on the trailer. That Ingram had caused a stolen license tag to be placed on the trailer, that some of the owner's markings on the trailer had been removed, and that the mud flaps had been turned around to conceal the owner's identity is circumstantial evidence from which the jury could conclude that Ingram knew or should have known that the property was stolen. *Ingram v. State*, 160 Ga. App. 300 (2) (287 SE2d 304) (1981) ("Possession (of stolen property) alone is not sufficient to show guilty knowledge; however, possession together with other circumstances and evidence may be used to infer the knowledge required by the statute. . . . [Cit.]"). Whether the explanation of possession offered by Ingram was a satisfactory explanation was a question for the jury. Id.

2. In two enumerations, Ingram contends the court erred by allowing hearsay testimony and by not giving a related limiting instruction to the jury. The testimony in question was Lieutenant Norwood's testimony about his conversation with Ingram on the telephone. We find no error. Voluntary, noncustodial, incriminating statements of defendants are admissible through the testimony of anyone who heard them. *Hardeman v. State*, 180 Ga. App. 632,

633-634 (2) (349 SE2d 839) (1986). Although Ingram does not claim that the identity of the person on the telephone was not authenticated, we note that "[o]ne way to authenticate a voice is through 'direct testimony of voice recognition.'" (Footnote omitted.) *Smith v. State*, 275 Ga. 326, 327 (2) (565 SE2d 453) (2002).

3. Ingram claims that the court erred by failing to give a requested jury charge on possession of recently stolen property. But Ingram has not indicated which of three possible charges is at issue or what exactly he contends was missing from the court's charge. Furthermore, our review of the charge related to the crime at issue shows that the charge as a whole fully and fairly instructed the jury on the law of the case. See *Watkins v. State*, 265 Ga. App. 54 (592 SE2d 868) (2004).

4. Ingram next contends the court erred by failing to give a requested charge based on OCGA § 44-1-13. But Ingram has not explained how that Code section is applicable to his case, nor do we see any relation. A request to charge must be correct, legal, apt, and precisely adjusted to some principle in the case. *Tumlin v. State*, 264 Ga. App. 565 (591 SE2d 448) (2003). We find no error.

5. Finally, Ingram contends the trial court failed to set aside an illegal verdict. He argues that the jury verdicts for both theft by taking and theft by receiving are mutually exclusive and that he is therefore entitled to a new trial under *Thomas v. State*, 261 Ga. 854 (413 SE2d 196) (1992).

In *Thomas*, the Supreme Court explained that, under Georgia law, theft by taking and theft by receiving are mutually exclusive crimes:

> "The offense of theft by receiving is intended to catch the person who buys or receives stolen goods, as distinct from the principal thief." *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367) (1980). An essential element of the crime of theft by receiving is, "that the goods had been stolen by some person other than the accused. . . ." *Austin v. State*, 89 Ga. App. 866, 868 (81 SE2d 508) (1954).

Id. at 855 (1). See also *Sosbee*, 155 Ga. App. at 197 (crimes of theft by taking and theft by receiving are mutually exclusive). The Supreme Court has also made clear that "where there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court." (Footnote omitted.) *Dumas v. State*, 266 Ga. 797, 800 (2) (471 SE2d 508) (1996). See also *Jackson v. State*, 276

Ga. 408, 410, n. 2 (577 SE2d 570) (2003) (suggesting that mutually exclusive conflicts in the verdict cannot be corrected at sentencing).

The State urges that the convictions in this case are not mutually exclusive because Ingram was convicted of *retaining* stolen goods, one form of theft by taking.[1] Accordingly, the State argues, one could both steal something and retain the stolen good.

As explained in the dissent in *Redding v. State*, 192 Ga. App. 325 (384 SE2d 910) (1989), the word retain was not always a part of the applicable law:

> Originally, Code Ann. § 26-2620 (Cobb) read "If any person shall buy or receive any goods . . . that shall have been stolen or feloniously taken from another, knowing the same to be stolen or feloniously taken, such person shall be an accessory after the fact, and shall receive the same punishment . . ." as the thief. The 1969 Criminal Code repealed this and enacted the present language, "receives, disposes of or retains." Ga. Laws 1968, p. 1249.

Id. at 328 (Beasley, J., dissenting). Nevertheless, as explained by Judge Beasley, the addition of the word retain was not intended to alter the fact that "the heart of the crime is guilty possession by someone who is not the thief." Id. To hold otherwise would require concluding that the legislature intended to create a second crime that would apply to all defendants charged with theft because, "[i]n every case, as a matter of fact, if [the defendant] stole the property, he would also necessarily 'retain' it, even if only for a short while." Id. We agree with this reasoning and adopt it herein. Our decision is reinforced by subsection (b) of OCGA § 16-8-7, which states that "[i]n any prosecution under this Code section it shall not be necessary to show a conviction of the principal thief." Subsection (b) shows that the legislative intent of subsection (a) was to prosecute someone other than the principal thief.

Accordingly, we must reverse for a new trial. *Thomas*, 261 Ga. at 856.

*Judgment reversed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JUNE 28, 2004.

*Ronald E. Smith*, for appellant.

---

[1] Ingram was charged with theft by receiving in that he "did retain stolen property," which he should have known was stolen, without the intent to return it to its owner.

*Robert E. Keller, District Attorney, Richard C. Brown, Assistant District Attorney*, for appellee.