A11A0287. COOKSTON v. THE STATE.
(710 SE2d 900)

PHIPPS, Presiding Judge.

Nina Cookston was convicted of felony theft by taking, after a jury found that she took more than $500 from a house she was hired to clean.[1] Cookston appeals, challenging the sufficiency of the evidence to support the conviction. We affirm.

When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

So viewed, the evidence showed the following. In March 2007, Loreane Watson hired Betty McFarland to help organize and clean the second floor of her two-story home. McFarland worked alone the first day, then brought Cookston to assist her the next two days.

---

[1] OCGA § 16-8-2 provides that a person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated. OCGA § 16-8-12 (a) (1) permits felony punishment where the property which was the subject of the theft by taking exceeded $500 in value.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Watson was present during and supervised the work.

Watson kept more than $500 in a large coffee can in a first-floor bedroom. She also kept a zippered bag containing more than $100 in the pocket of a chair in the first-floor living room. When McFarland and Cookston arrived, Watson went into the bedroom and placed clothing over the coffee can so that nobody would see it. All of the work was to be done on the second floor, and there was no reason for McFarland or Cookston to enter the first-floor bedroom.

Watson kept the home locked "most of the time," including while McFarland and Cookston were working inside the home. Watson affirmed that she had not let anyone else in the house "in the meantime" besides her husband, and that she was not "in the habit of letting a bunch of people come through [her] house."

Watson recalled that on Cookston's second day of work, when the three women were in an upstairs bedroom, Cookston remarked that she was going downstairs to get a soft drink. She went alone. After Cookston had been gone for 20 minutes or more, Watson became uneasy and asked McFarland where Cookston was. McFarland guessed that Cookston was downstairs smoking. Noting that Cookston could smoke upstairs, Watson moved the boxes that McFarland and Cookston had placed on her walker and "all around" her and went downstairs; by the time Watson encountered Cookston, Cookston was either heading back upstairs or cleaning up downstairs (a point on which Watson's testimony is unclear). When Watson was asked at trial whether there were any other times during which she was with only one of the women, she replied only that McFarland and Cookston went outside to smoke and talk for a while on both days when Cookston worked.

At the end of McFarland's third and Cookston's second work day, Watson noticed that the coffee can and the money it contained were missing. Watson telephoned McFarland to ask her about the money. McFarland "said not to have her arrested."

Watson then telephoned Cookston and told her she knew Cookston had taken the money and that she wanted it back. At first, Cookston denied having taken the money. Cookston later telephoned Watson and told her that she could not send all of it back at once, but that she could return some of the money.[3] Cookston had "described . . . the money" to Watson.

The day after Cookston's last day of work, Watson noticed that $100 was missing from the zippered bag. Watson had seen the

---

[3] See *Ingram v. State*, 268 Ga. App. 149, 150 (2) (601 SE2d 736) (2004) (voluntary, noncustodial, incriminating statements of defendants are admissible through the testimony of anyone who heard them).

zippered bag on Cookston's last day of work, and the money was in the bag before the work started. None of the money was recovered. McFarland and Cookston were indicted for theft by taking the money, and tried together. Neither defendant testified at trial. McFarland was found not guilty.

Cookston contends that the evidence was insufficient to support her conviction because it was "purely circumstantial and [did] not exclude beyond a reasonable doubt the hypothesis" that McFarland or another individual had committed the theft.

"For a conviction based on circumstantial evidence to stand, the facts must prove not only the hypothesis of guilt, but must exclude every other reasonable hypothesis but the guilt of the accused."[4]

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[5]

Here, there was evidence that Cookston was alone for 20 minutes or more on the floor of the house where the money was kept (and where no cleaning was to be performed); the money found to be missing from the zippered bag the day after Cookston last worked was in the bag before the work started; the money-filled coffee can was in the first-floor bedroom when Cookston came to work and was missing at the end of her last day of work; and when Watson accused Cookston of taking the money from the coffee can, Cookston replied that she could not return all of the money at once. While there was circumstantial evidence that also implicated McFarland,[6] reasonable jurors could have found from the evidence that the hypothesis that McFarland took the money was excluded based on testimony that Cookston had been alone in the area of the house where the money was kept — while there was no such evidence regarding McFarland. And there was evidence that Cookston had incriminated herself by offering to return some of the money to Watson — while McFarland had made no such statement. As for the hypothesis that some other

---

[4] *Tauch v. State*, 305 Ga. App. 643, 645 (1) (700 SE2d 645) (2010) (citations and punctuation omitted).

[5] *Crouch v. State,* 279 Ga. 879, 880 (1) (622 SE2d 818) (2005) (citations and punctuation omitted).

[6] For instance, in addition to the facts recited above, there was evidence that household items found in McFarland's home had been taken without permission from Watson's home.

person committed the crime, there was evidence that the house stayed locked most of the time, and no evidence that anyone else (other than Watson, her husband, McFarland and Cookston) was in the house during the relevant time period. The jury was thus authorized to reject Cookston's hypothesis.[7]

Moreover, evidence that McFarland may have taken the money would not necessarily have precluded a finding of Cookston's guilt. The court charged the jury that "[e]very party to a crime may be charged with and convicted of commission of the crime," and that a person is a party to a crime "if that person directly commits the crime or intentionally helps in the commission of the crime."[8] The jury was authorized to find from the evidence presented that Cookston was guilty beyond a reasonable doubt as a party to the crime.[9] We note that McFarland's acquittal did not bar Cookston's conviction as a party to the crime.[10]

A rational trier of fact was authorized to find that the evidence was sufficient to exclude every reasonable hypothesis except that of Cookston's guilt, and to conclude beyond a reasonable doubt that Cookston was guilty of theft by taking.[11]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED MAY 31, 2011.

*Sean J. Lowe*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Michael J. Moeller, Assistant District Attorney*, for appellee.

---

[7] See generally *Holland v. State*, 251 Ga. App. 312, 313 (554 SE2d 303) (2001).

[8] See OCGA §§ 16-2-20 (a) (providing that every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime); 16-2-20 (b) (providing, in pertinent part, that a person "is concerned in the commission of a crime only if he: (1) [d]irectly commits the crime; . . . [or] (3) [i]ntentionally aids or abets in the commission of the crime").

[9] See generally *Underwood v. State*, 198 Ga. App. 384, 385 (401 SE2d 589) (1991).

[10] See OCGA § 16-2-21 (providing, in pertinent part, that any party to a crime who did not directly commit the crime may be convicted for commission of the crime upon proof that the crime was committed and that he was a party thereto, although the person claimed to have directly committed the crime has not been convicted or has been acquitted); *White v. State*, 257 Ga. 236 (356 SE2d 875) (1987).

[11] See generally *McClain v. State*, 301 Ga. App. 844, 847 (1) (689 SE2d 126) (2010).