294 Ga. 877
FINAL COPY

S13A1583.  REED v. THE STATE.

HUNSTEIN, Justice.

Appellant Mark Reed was convicted of malice murder and other offenses in connection with the 2007 shooting death of Marlon Green.  Proceeding pro se, Reed appeals the denial of his motion for new trial on numerous grounds.  Finding no error, we affirm.[1]

---

[1] The crimes were committed in March 2007.  Reed and co-indictee LaShawn Payne were indicted in August 2009 by a DeKalb County grand jury for malice murder, felony murder, aggravated assault, theft by taking, theft by receiving, concealing the death of another, and possession of a firearm during commission of a felony.  At the conclusion of a September 2011 jury trial in which Payne testified under a plea deal for the State, Reed was convicted on all counts.  Reed was sentenced to life imprisonment for murder, a consecutive ten-year term for theft by taking, another consecutive ten-year term for concealing a death, a concurrent ten-year term for theft by receiving, and a consecutive five-year term for firearm possession, for a total term of life plus 25 years.  The remaining charges merged or were vacated by operation of law.  A timely motion for new trial was filed on October 11, 2011.  After appointment of new appellate counsel, the new trial motion was amended on November 27, 2012 and again on January 3, 2013.  Reed then filed a pro se motion for leave to file an untimely motion in arrest of judgment, which was denied.  At a hearing held on January 8, 2013, Reed requested leave to proceed pro se, which the trial court granted.  Thereafter, Reed filed two amended motions for new trial, and a hearing was held on February 12, 2013.  The new trial motion was denied on February 26, 2013; by separate order on the same date, the trial court vacated Reed's convictions and sentences for theft by taking and theft by receiving on the ground that they were mutually exclusive, Ingram v. State, 268 Ga. App. 149 (5) (601 SE2d 736) (2004), and ordered Reed resentenced to life plus a 15-year

Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows. In 2006, Reed moved from California to Atlanta with his girlfriend, LaShawn Payne, and her 13-year-old son, Cameron Thomas. They began renting a home in DeKalb County from Marlon Green. During their occupancy, Reed became suspicious that Green did not actually own the property and was perpetrating a fraud on them. After discovering that Green's name was not on the deed to the property, Reed and Payne stopped paying rent.

In early March 2007, Green drove to the home. Seeing Green drive up, Reed told Payne to retrieve his shotgun. The two men argued in the yard for some time and then entered the house together, still arguing. Reed directed Green to sit down, asked Green who he really was, and then grabbed the shotgun and shot Green in the chest. Green fell to the floor, bleeding, and quickly died. Thomas, who was surreptitiously watching the confrontation from the stairwell leading to the second floor of the house, witnessed the shooting, though he feigned ignorance when his mother came upstairs to check on him shortly thereafter.

Reed, who told Payne she "[didn't] have any choice in this," directed Payne to

clean up the blood and other evidence of the crime. Reed removed Green's body, wrapped it in a tarp, and loaded it into the trunk of Green's car. Reed and Payne next drove to a nearby abandoned home with a large wooded lot, where they buried the body. Reed then drove Green's car to Queens, New York, where he abandoned it. At Reed's direction, Payne followed him in her car to New York, and the two drove back to Georgia together. They continued living in the DeKalb County home and took further measures to conceal all traces of the crime, repainting the interior walls and sanding down the floors. In September 2007, after receiving notice of the pending foreclosure on the property, they returned to California.

At some point after returning to California, Thomas confided in his father about what he had witnessed. Local law enforcement were contacted, and both Thomas and Payne were questioned. Payne gave authorities a detailed statement about the crime and drew a map of the location where Green's body was buried. DeKalb police were notified, whereupon they searched the location Payne had provided and found skeletal remains, with shotgun pellets embedded therein, as well as a plastic tarp and some items of jewelry and decayed clothing. Green's mother later identified the jewelry as having belonged to her son, and mitochondrial DNA analysis further corroborated the identity of the remains.

1. Though Reed has not specifically enumerated the general grounds, we find that

2

the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Reed was guilty of the crimes for which he was convicted and sentenced. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Reed contends that the trial court erred in allowing Payne to testify regarding Reed's threats to harm her and her family if she failed to cooperate with him after the murder, as well as physical and sexual abuse Reed inflicted upon her both before and after the murder. Reed moved in limine to exclude such testimony, arguing that it was not relevant to the issues in the case and that it improperly placed his character in issue. The trial court held the testimony admissible to explain Payne's state of mind and conduct in the aftermath of the murder.

We find no abuse of discretion in this ruling. Payne was clearly the State's star witness, and the defense's strategy was primarily to attack her credibility by questioning why she had failed to report the crimes for so long and suggesting that she came forward only when she needed leverage with police regarding another matter. The State thus properly sought to adduce Payne's testimony regarding Reed's abuse and threats to rebut this line of attack by showing that Payne's conduct was driven by fear. As we have noted, "[e]vidence that is material in explaining the conduct of [a] witness does not

become inadmissible simply because defendant's character is incidentally put in issue." Hall v. State, 264 Ga. 85, 86 (2) (441 SE2d 245) (1994); accord Dyers v. State, 277 Ga. 859 (2) (596 SE2d 595) (2004). The defense made an issue of Payne's conduct in failing to come forward, and the evidence of Reed's threats and abuse was relevant to explaining that conduct.[2]

3. Several of Reed's enumerations of error center on the fact that the indictment cites the date of the murder as "on or about the 21st day of May, 2007," when in fact the evidence shows that the murder occurred in early March of 2007. However,

> [e]ven though it has been held that a definite date of an offense should be alleged in an indictment, the state is not restricted to proof of the date stated. It is sufficient if the evidence demonstrates that the offense was committed at any time within the statute of limitations.

(Footnotes omitted.) Jack Goger, Daniel's Ga. Criminal Trial Practice, § 13-6 (2013-2014 ed.). Thus, except where the exact date of the offense is alleged to be an essential

---

[2] To the extent Reed now asserts error, with regard to this evidence, in the trial court's failure to comply with Uniform Superior Court Rule 31.3 (requiring prior notice and hearing as to admissibility of similar transaction evidence), this argument was waived, as Reed's counsel conceded at the hearing on the motion in limine that "[t]his is not similar transaction evidence." See Goodman v. State, 293 Ga. 80 (3) (742 SE2d 719) (2013) (defendant waived argument regarding non-compliance with Uniform Superior Court Rules 31.1 and 31.3 by failing to object on such grounds at trial); Jones v. State, 239 Ga. App. 832 (1) (a) (521 SE2d 614) (1999) (trial counsel's concession at trial that the Rules 31.1 and 31.3 notice and hearing requirements did not apply constituted an affirmative waiver of the issue on appeal).

element thereof or where the accused raises an alibi defense, any variance between the date listed in the indictment and the date on which the crime is proven to have occurred is of no consequence. Id.; accord Eberhardt v. State, 257 Ga. 420 (2) (359 SE2d 908) (1987).

Here, the May 21, 2007 date was not alleged to be an essential element of any of the offenses charged, and Reed did not assert an alibi defense. In addition, the allegations were sufficiently clear and specific to afford Reed adequate notice of the charges he was facing and to preclude future prosecution for the same offenses. See Roscoe v. State, 288 Ga. 775 (3) (707 SE2d 90) (2011) (fatal variance between allegations and proof will be found only if allegations do not sufficiently inform the accused of the charges so as to enable him to present a defense or are not adequate to protect the accused against future prosecution for the same crimes). Therefore, the erroneous date cited in the indictment provides no basis for reversal of Reed's convictions.[3]

4. Reed also claims that the State failed to prove definitively the identity of the

---

[3]To the extent Reed also contends in this regard that his prosecution occurred outside the statute of limitations, this argument is meritless. There is no limitation period for murder, see OCGA § 17-3-1 (a), and the other offenses of which Reed was charged and convicted are subject to a four-year limitation period. See id. at (c). As Reed was indicted in August 2009 for offenses occurring in March 2007, his prosecution was well within the applicable limitation period.

5

victim's skeletal remains and therefore failed to establish the corpus delicti by proof beyond a reasonable doubt. See Benson v. State, 294 Ga. 618, 620 (1) (754 SE2d 23) (2014) ("corpus delicti is established by proof 'that the person alleged in the indictment to have been killed is actually dead, and second, that the death was caused or accomplished by violence, or other direct criminal agency of some other human being'" (citation and punctuation omitted)). Here, the State's DNA expert testified that, though mitochondrial DNA testing is not capable of establishing a definitive "match" to a single individual, her testing in this case established that the DNA sequence from the femur bone recovered from the burial site was the same as the sequence revealed from testing a DNA sample from Green's mother. Based on this finding, the expert testified that she "cannot exclude" Green as being the source of the DNA sample she tested, and that such a finding is the most definitive conclusion this type of DNA testing can generate. This evidence, together with Green's mother's testimony that the ring and beads recovered from the burial site belonged to her son, was plainly sufficient to establish beyond a reasonable doubt that the victim whose remains were recovered was, in fact, Green. See Edgehill v. State, 253 Ga. 343 (1) (320 SE2d 176) (1984) (testimony that jewelry and clothes found on the victims were articles belonging to them, together with forensic expert's conclusions based on dental records, held sufficient to identify the victims);

6

Reddick v. State, 202 Ga. 209 (2) (42 SE2d 742) (1947) (corpus delicti proven in part by the ring worn by the victim and identified by the victim's children).

5. Contrary to Reed's assertion, his right of access to the court was not improperly limited when the trial court denied his request to file an untimely motion in arrest of judgment. Reed has been afforded ample opportunity, both through counsel and pro se, to assert all of his enumerations of error in his motion for new trial and now on appeal.

6. Reed contends that there was insufficient evidence to corroborate the testimony of Payne, an admitted accomplice. Under former OCGA § 24-4-8,[4] "[i]n felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient and must be supported by the testimony of at least one other witness or by corroborating circumstances." (Citations and punctuation omitted.) Hamm v. State, 294 Ga. ___, ___ (___ SE2d ___) (2014). Here, the murder, aggravated assault, and firearm possession offenses were corroborated by the testimony of Payne's son, Cameron Thomas, an eyewitness to the shooting. With regard to the concealing of a death offense, though there were no witnesses other than Payne with firsthand knowledge about the secreting and burial of Green's body, there was ample circumstantial corroboration in the

---

[4] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, this concept is now codified at OCGA § 24-14-8.

form of the skeletal remains unearthed from the precise location where Payne told police they had buried the body. See id. (corroborating evidence may be circumstantial). This enumeration is without merit.

7. Reed also asserts that trial counsel was ineffective (a) for failing to seek to quash or otherwise object to the indictment, based on its citing an erroneous date of offense, and for failing to request a limiting instruction as to the error; and (b) for failing to request a jury instruction on voluntary manslaughter. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent

attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) With regard to the date listed in the indictment, we have already determined in Division 3 that the error did not render the indictment fatally defective. For this reason, trial counsel did not render deficient performance in failing to object on this basis. See Wesley, 286 Ga. at 356 (failure to make meritless objection does not constitute deficient performance).

(b) As to the failure to request an instruction on voluntary manslaughter, even if we were to find that there was slight evidence necessitating the giving of such an instruction upon request, see Harris v. State, 263 Ga. 492 (2) (435 SE2d 671) (1993), we cannot find that trial counsel's performance was objectively unreasonable given Reed's failure to adduce any testimony from trial counsel at the new trial hearing. See Davis v. State, 280 Ga. 442, 443 (2) (629 SE2d 238) (2006) (where trial counsel does not testify at new trial hearing, "it is extremely difficult to overcome th[e] presumption" that trial counsel's conduct fell "within the wide range of reasonable professional assistance").

Accordingly, all of Reed's enumerations of error lack merit, and we therefore

affirm.

Judgment affirmed. All the Justices concur.

Decided March 28, 2014.

Murder. DeKalb Superior Court. Before Judge Flake.

Mark Reed, pro se.

Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.