**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 18, 2020**

# In the Court of Appeals of Georgia

A19A2407. PICKLESIMER v. THE STATE.

HODGES, Judge.

Tommy R. Picklesimer was convicted by a jury of aggravated sexual battery of his granddaughter, S. P., three counts of child molestation of S. P., and one count of child molestation of a second granddaughter, M. P. Picklesimer was acquitted of raping S. P. and one count of child molestation of S. P. Picklesimer now appeals, contending that (1) the trial court erred in denying his special demurrer to quash the indictment due to insufficient specificity as to the dates and places of the offenses; (2) the conviction on one of the counts of molestation of S. P. is barred by the acquittal on the charge of raping S. P.; (3) the trial court erred in restricting his cross-examination of a detective as to the dates of the offenses; (4) the evidence is insufficient to establish that the offenses occurred within the dates listed in the

indictment; (5) the trial court erred in charging the jury; (6) his statement to police should have been suppressed because of the clergy privilege; (7) the trial court erred in not granting a continuance to permit investigation of a subsequent allegation made by S. P. against another individual; and (8) the evidence is insufficient as to one of the counts to find the necessary intent to molest M. P. For the reasons that follow, we find no error and affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation omitted.) *Walker v. State*, 349 Ga. App. 188 (825 SE2d 578) (2019).

So viewed, the evidence shows that Picklesimer is the grandfather of S. P. and M. P., who both turned 9 years old in late 2004. The girls are cousins, and both of their fathers resided with Picklesimer and his wife at that time. Both of the girls would visit their fathers and stay overnight at Picklesimer's home.

Before S. P.'s ninth birthday in October 2004, Picklesimer began to touch S. P. inappropriately on her vagina, breasts, and buttocks. Picklesimer touched S. P.'s vagina with his hand and with his penis multiple times. Picklesimer also inserted his finger inside S. P.'s vagina, and attempted to stick two fingers in her vagina, but they

2

would not fit. Additionally, he took S. P.'s hand and made her rub his penis, sometimes to ejaculation. On one occasion, Picklesimer woke up S. P., took off her underwear, and told her to get on top of him. He then tried to stick his penis in her vagina, but it would not fit, and "wet stuff came from his private." These encounters made S. P.'s "tummy feel sick" and made her want to cry. Picklesimer told S. P. not to tell anyone. The abuse ended the last time S. P. visited Picklesimer's home, which she believes was in February 2005.

Picklesimer also touched his grandaughter M. P. inappropriately. Specifically, he took M. P.'s hand and made her touch his penis. During her forensic interview, M. P. stated that she believed Picklesimer did not mean to make her do this because he appeared to be asleep when it happened. She later testified, however, that she was not sure if Picklesimer was asleep. S. P. and M. P. would sometimes sleep together on the couch at Picklesimer's house because they were afraid of sleeping in a room where he could lock the door. According to M. P., her abuse occurred in the summer of 2004.

Following S. P.'s disclosure, police asked Picklesimer to come in to discuss her allegations. Although he was not under arrest at the time, the detective read Picklesimer his *Miranda* rights and he signed a waiver. During this interview,

Picklesimer admitted to sexual contact with S. P. He stated that one time he woke up with an erection and S. P. was on top of him with her panties off. He also admitted he placed S. P.'s hand on his penis to have her rub it on multiple occasions, sometimes to ejaculation. He claimed that he did this so he could show S. P. what happens when a penis is fondled. He also admitted that he rubbed S. P.'s vagina with his hand inside her panties on multiple occasions, but denied digitally penetrating her. Picklesimer claimed that the child came on to him.

Picklesimer also admitted to sexual contact with M. P. Specifically, Picklesimer stated that M. P. entered the bathroom while he was urinating, that she touched his penis, and that he then moved her hand back and forth to rub his penis because it "just blowed [him] up when [he] felt her hand." M. P. denies that this specific incident occurred.

As a result of his conduct, Picklesimer was indicted for several crimes: rape of S. P.; aggravated sexual battery of S. P. for "penetrat[ing] the sexual organ of [S. P.] with a foreign object, to wit: the finger of the accused"; child molestation of S. P. for "placing his hand on and about the vagina" of S. P.; child molestation of S. P. for "placing his hand on and about the buttocks" of S. P.; child molestation of S. P. for placing S. P.'s hand on his penis; child molestation of S. P. for "placing his penis on

4

and about the vagina" of S. P.; and child molestation of M. P. for placing M. P.'s hand on his penis. The indictment alleged all of these crimes occurred in Forsyth County "between the 1st day of September, 2004 and the 28th day of February, 2005, the exact date being unknown[.]"

Picklesimer filed a special demurrer to quash the indictment on the basis that the allegations in the indictment were not made with the greatest particularity available to the State due to the use of a range of dates and due to the failure to more specifically allege the location of the offenses. The trial court conducted a hearing on Picklesimer's motion during which the investigating detective and S. P.'s mother testified. The trial court denied Picklesimer's motion to quash, finding that the State proved that the dates in the indictment were made with the greatest particularity available and that the allegations in the indictment as to the place of the offenses was sufficient.

Picklesimer was tried by a jury. He was convicted of aggravated sexual battery of S. P., three counts of child molestation of S. P., and one count of child molestation of M. P. Picklesimer was acquitted of raping S. P. and the count of child molestation

concerning placing his hands on or about the buttocks of S. P. Following the denial of his motion for new trial, Picklesimer appeals.[1]

1. In two related enumerations of error, Picklesimer contends that the trial court erred in denying his special demurrer as to the dates and place of the offenses contained in the indictment. We disagree.

The general rule in Georgia is that

an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. However, where the State can show that the evidence does not permit it to allege a specific date on which the offense occurred, the

---

[1] We take this opportunity to note that this trial was conducted in February 2008, and Picklesimer's motion for new trial was denied in October 2009. The appeal in this case, however, was not forwarded to this Court for docketing until 2019. At this point, the children discussed in this opinion are several years into adulthood. Although Picklesimer raises no claim of prejudice as a result, our Supreme Court has strongly rebuked delay in the resolution of post-conviction matters. See, e. g., *Owens v. State*, 303 Ga. 254, 259-260 (4) (811 SE2d 420) (2018). While much of the discussion has focused on delays in deciding motions for new trial, long delays in perfection of the record for appeal, as happened here, are no less egregious. As our Supreme Court explained, "even if long-delayed appeals rarely result in outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient. . . . [w]e must all work to prevent delays, particularly in the most serious of our criminal cases, that cannot be explained or justified to the parties in those cases, the victims of crimes, and the public we serve." Id.

State is permitted to allege that the crime occurred between two particular dates.

(Citations omitted.) *State v. Layman*, 279 Ga. 340, 340-341 (613 SE2d 639) (2005). We review a trial court's denial of a special demurrer de novo; however,

[w]e apply different standards when we review rulings on special demurrers pretrial and post-trial. When reviewing a ruling before trial, we consider whether the indictment is perfect in form and substance, but when reviewing it after trial, we consider whether the defendant suffered actual prejudice from alleged deficiencies in the indictment.

(Citations and punctuation omitted.) *Herring v. State*, 334 Ga. App. 50, 52 (778 SE2d 57) (2015). Here, we are reviewing the indictment post-trial, so we focus our analysis on actual prejudice.

As stated above, the indictment in this case alleged that all of the offenses occurred in Forsyth County between the dates of September 1, 2004 and February 28, 2005. The dates used in the indictment were taken from the forensic interview of S. P. Picklesimer makes no contention that prior to trial the State failed to provide trial with copies of the forensic interviews upon which the indictment relied. Moreover, the abuse occurred during S. P.'s visitation with her father at Picklesimer's home, and at the hearing held on Picklesimer's special demurrer, S. P.'s mother testified that she

was unable to further specify the dates of visitation because there was no set visitation schedule.

Even assuming the State could have further specified the dates or place of the offenses in the indictment, we find that Picklesimer was not actually prejudiced by any alleged deficiencies. The only evidence before the jury of the dates of the offenses came from either the forensic interviews of the victims – which were available to Picklesimer before trial – or the statements given by Picklesimer himself to police. Moreover, the only evidence of the location of the offenses, both from the victims and Picklesimer, is that the abuse occurred in Picklesimer's home. Accordingly, there is no evidence that the form of the indictment impaired Picklesimer's ability to present his defense. See *Berman v. State*, 279 Ga. App. 867, 872 (6) (632 SE2d 757) (2006) ("Berman complains that the failure to specify dates in the indictment forced him to defend against allegations that may have occurred at any point during the seven-year statute of limitation. But he has not shown that this requirement impaired his ability to present a defense.") (citation omitted); see also *Harris v. State*, 324 Ga. App. 411, 415 (3) (750 SE2d 721) (2013) ("Harris does not show how his investigation or defense preparation was hindered by the indictment as written; therefore, this enumeration presents no basis for reversal.").

Picklesimer suggests in his brief that "[e]stablishing an alibi *may* under certain circumstances be infinitely easier when both a reduced time period *and* a location are specified." (Emphasis in original.) This theoretical statement, however, is starkly different from stating that Picklesimer actually had alibi evidence that he was unable to rely upon due to the form of the indictment. See *Hutton v. State*, 192 Ga. App. 239, 241 (4) (384 SE2d 446) (1989) ("The defendant in this case offered no alibi evidence, nor did he at any time request a continuance on the ground of surprise, nor did he otherwise express a need for additional time to rebut any evidence presented by the state. Consequently, it does not appear that the failure to allege the specific date of the offense in the indictment materially affected his ability to present a defense.") (citation and punctuation omitted). In the absence of a demonstration of actual prejudice resulting from the alleged deficiencies in the indictment, these enumerations fail.[2]

---

[2] Picklesimer's reliance on *State v. Layman*, 279 Ga. 340 (613 SE2d 639) (2005), to support his argument that the indictment should have been quashed is misplaced. Not only was *Layman* in a different procedural posture than this case, as the sufficiency of the indictment was being reviewed pre-trial, it also is factually inapposite. There, the State clearly could have more specifically narrowed the range of dates in the indictment. For instance, the indictment alleged the defendant murdered the victim between the dates of June 30 and July 19 even though the victim's father spoke to the victim on July 4 and several other witnesses saw the victim alive on that day. Id. at 340-341.

9

2. Picklesimer next contends that his child molestation conviction for "placing his penis on and about the vagina" of S. P. is inconsistent with and barred by his acquittal for raping S. P. We disagree.

Specifically, Picklesimer argues that because he was acquitted of rape, which involves even slight penetration of S. P.'s vulva or labia – both of which are anatomically positioned before the vagina on the female body – he could not be convicted of child molestation for placing his penis on and about S. P.'s vagina. In other words, he asserts he could not place his penis on and about S. P.'s vagina without also penetrating her vulva and labia. Regardless of whether Picklesimer's argument is anatomically accurate, it is of no legal merit.

> [A]n inconsistent verdict involves an alleged inconsistency between guilty and not guilty verdicts against a defendant or defendants that cannot be logically reconciled. However, because the inconsistent verdict rule has been abolished, a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count as a legitimate means of having his or her conviction reversed. This is the case because it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. Appellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be an error by the jury in its consideration or it could be

mistake, compromise, or lenity. Stated another way, it is imprudent and unworkable to allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake.

(Citations and punctuation omitted.) *Carter v. State*, 298 Ga. 867, 868-869 (785 SE2d 274) (2016). Accordingly, even assuming without deciding that Picklesimer's acquittal for rape is inconsistent with his conviction for child molestation for placing his penis on and about S. P.'s vagina, this provides no basis for reversal of his child molestation conviction.

3. Picklesimer also contends that the trial court erred in restricting his cross-examination of the detective on the issue of the dates of the offenses. We find no abuse of discretion.

Picklesimer is correct that

[a] defendant has the right to a thorough and sifting cross-examination of any witness called against him. However, the extent of cross-examination can be curtailed if the inquiry is not relevant or material, and such restriction lies within the discretion of the trial court which will not be disturbed on appeal unless manifestly abused. Trial

11

judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, confusion of the issues, or interrogation that is repetitive or only marginally relevant.

(Citations omitted.) *Holloway v. State*, 283 Ga. App. 823, 825 (643 SE2d 286) (2007)[3]; see also *Elrod v. State*, 195 Ga. App. 571, 572 (4) (394 SE2d 548) (1990) ("The admission of evidence is a matter which rests within the discretion of the trial court. The right of cross-examination is not abridged where the examination is limited by the trial court to relevant matters by proper questioning. The trial court has a wide range of discretion in the control of cross-examination.") (citations and punctuation omitted). Indeed, "[g]enerally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish." (Citation omitted.) *Phyfer v. State*, 259 Ga. App. 356, 358 (2) (577 SE2d 56) (2003).

---

[3] We note that due to the excessively long delay in the preparation of the record in this case, the trial occurred prior to the adoption of the New Evidence Code in 2013. See *Boothe v. State*, 293 Ga. 285, 286, n.2 (745 SE2d 594) (2013) ("Because this case was tried before January 1, 2013, our new Evidence Code does not apply.").

Here, we find that the trial court did not abuse its discretion in limiting cross-examination about the dates of the offenses because such dates were immaterial.

> It is a long-standing principle of Georgia law that a date or range of dates alleged in an indictment, without more, is not a material allegation of the indictment, and, consequently, unless the indictment specifically states that the alleged dates are material, the State may prove that the alleged crime was committed on any date within the statute of limitations.

*Thomas v. State*, No. A19A1195, 2019 Ga. App. LEXIS 626, at *4 (1) (a) (Ga. Ct. App. Oct. 29, 2019). It is undisputed that, here, the indictment did not allege that the dates of the offenses were material.

Throughout his brief Picklesimer argues that his special demurrer made the dates of the offenses material because the State took the position in response that the indictment narrowed the dates to the greatest extent possible. We find this argument unavailing.

> [E]ven though it has been held that a definite date of an offense should be alleged in an indictment, the state is not restricted to proof of the date stated. It is sufficient if the evidence demonstrates that the offense was committed at any time within the statute of limitations. Thus, except where the exact date of the offense is alleged to be an essential element thereof or where the accused raises an alibi defense, any variance

13

between the date listed in the indictment and the date on which the crime is proven to have occurred is of no consequence.

(Citations omitted.) *Reed v. State*, 294 Ga. 877, 879 (3) (757 SE2d 84) (2014). As mentioned, the dates were not alleged to be essential elements in the indictment and Picklesimer never raised an alibi defense. Indeed, he admitted to much of the conduct for which he was convicted. As discussed in Division 1, if a defendant is actually prejudiced by a variance between the indictment and the evidence, the law provides a remedy. The mere filing of a special demurrer, however, does not convert an immaterial element of an indictment into a material one. Because the dates of the offenses were not material, we find that the trial court did not abuse its discretion in limiting cross-examination about such dates.

4. Picklesimer contends the evidence was insufficient for the jury to find that the offenses occurred within the dates alleged in the indictment. We find no error.

For the reasons discussed in Division 3, the dates of the offenses were not material and the State was not required to prove that the offenses took place within the range of dates contained in the indictment. See *Reed*, 294 Ga. at 879 (3). Accordingly, this enumeration fails.

14

5. Picklesimer argues that the trial court erred in charging the jury. We disagree.

"In reviewing an allegedly erroneous jury instruction, we apply the plain legal error standard of review. A jury charge must be considered as a whole and the parts read in conjunction with each other." (Citation omitted.) *Daniels v. State*, 310 Ga. App. 562, 565 (2) (714 SE2d 91) (2011). To satisfy this standard,

> [f]irst, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation omitted.) *Pye v. State*, 322 Ga. App. 125, 128 (2) (742 SE2d 770) (2013).

Here, Picklesimer requested that the jury be charged as follows: "I charge you that in order to authorize a conviction on any of the alleged offenses you must find beyond a reasonable doubt that the alleged offenses occurred within the dates set

15

forth by the Indictment, i.e., September 4, 2004 to February 28, 2005." Instead, the

trial court charged the jury in line with the State's request:

> Members of the Jury, evidence of guilt of the Accused is not restricted
> to the day he mentioned in the Indictment, but may be proved to have
> taken place on any date prior to the return of the Indictment so long as
> the date is within the applicable statute of limitations. The statute of
> limitations for sexual offenses committed upon a child under the age of
> 16 is seven years.

As discussed in Division 3, the charge given is a correct statement of the law,

and the charge requested by Picklesimer is not a correct statement of the law. When

a jury charge is a correct statement of law, a defendant "cannot satisfy the first two

prongs of the plain error test – that a clear or obvious legal error occurred. Thus, we

find no error, much less any plain error[.]" (Citation omitted.) *Pye*, 322 Ga. App. at

129 (2).

6. Picklesimer contends that the trial court erred in admitting his statement to

police as such was protected by the clergy privilege. We find no error.

Prior to trial, Picklesimer moved to suppress his statement to police by

attempting to invoke the clergy privilege. At the time of Picklesimer's trial in 2008,

OCGA § 24-9-22 governed the bounds of the clergy privilege. It provided:

16

Every communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to any Protestant minister of the Gospel, any priest of the Roman Catholic faith, any priest of the Greek Orthodox Catholic faith, any Jewish rabbi, or to any Christian or Jewish minister, by whatever name called, shall be deemed privileged. No such minister, priest, or rabbi shall disclose any communications made to him by any such person professing religious faith, seeking spiritual guidance, or seeking counseling, nor shall such minister, priest, or rabbi be competent or compellable to testify with reference to any such communication in any court.

Id. Consistent with the text of the statute, our law was clear that "if such communications are not made to profess religious faith, or to seek spiritual comfort or guidance . . . the ministerial privilege is not applicable." (Citation omitted.) *Morris v. State*, 275 Ga. 601, 602 (2) (571 SE2d 358) (2002).

During Picklesimer's interview with police, the following exchanges took place:

Detective: Yeah, [a mutual acquaintance] used to pastor a church I used to go to for a while.

Picklesimer: Really?

Detective: I don't know if you remember seeing me up at Christian Hill in town and I've been up there a few times.

17

Picklesimer: And you belonged to it then?

Detective: I did. I did. Me and my wife moved to a different church.

Picklesimer: Oh, okay.

Detective: We moved to Freedom Tabernacle down south.

Picklesimer: Do you know the preacher at Christian Hill?

Detective: Yeah. Yeah.

Picklesimer: I pastor over here at Spirit.

Detective: Oh, do you actually pastor.

Picklesimer: Right.

. . .

Picklesimer: And you're a preacher, too; right?

Detective: I have, yeah. I have. I haven't for a long time. But I've got to, (Inaudible)

Picklesimer: Now, your wife's the one that played piano?

Detective: Uh-huh.

Picklesimer: That's what I thought. Yeah.

Detective: Yeah. Do you have any idea why you're here today?

Picklesimer: No.

Detective: I'm going to talk to you about what we did with [S. P.]. We talked to [S. P.] She went into some detail about some of the things that have happened while she had been over staying and visiting with you. And that's what we're here to talk to you about. Do you know what I mean?

Later in the interview, after Picklesimer had already admitted to various sexual acts with S. P., a different detective said to Picklesimer "Now, if you had to get up in front of a higher authority, then, that means that you have to admit what you've done; right? It's called allocution time, and that means that you got to lay out everything that you've done." Picklesimer contends that as a result of these exchanges with detectives his admissions were protected by the clergy privilege and, thus, inadmissible.

"Evidentiary rulings are reviewed under an abuse of discretion standard[.]" *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014). We do not have the

19

benefit of the transcript of the hearing on the motion to suppress Picklesimer's statement, but we have the transcript of his statement in the record, and we do not find that the trial court abused its discretion in denying Picklesimer's motion. It would strain credulity to consider the above exchange to be evidence of Picklesimer's attempt to profess religious faith or seek spiritual comfort or counseling. The statements were made to a detective in a police station who informed Picklesimer that he was investigating allegations of child sexual abuse. The mere fact that the detective at some point in the past was a pastor to people other than Picklesimer does not attach the clergy privilege to Picklesimer's subsequent admissions of abusing S. P. and M. P. See *Morris*, 275 Ga. at 602-603 (2) (clergy privilege did not attach to statements made to family friend who had recently become a minister when those statements were made as a result of a strong secular, not religious, bond); *Parnell v. State*, 260 Ga. App. 213, 214 (1) (581 SE2d 263) (2003) (statements made by defendant to his father, who was a minister, were not subject to exclusion under the clergy privilege because the father was acting in the role of a parent, not a minister, at the time the statements were made). Accordingly, the trial court did not abuse its discretion in admitting Picklesimer's statements.

7. Picklesimer next contends that the trial court erred in refusing to grant him a continuance to allow the defense time to investigate a subsequent allegation by S. P. against another individual. We find no error.

"A trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion, and the party seeking a continuance must show due diligence. Further, to warrant a reversal on appeal, the appellant must also show that harm resulted from the denial of the continuance." (Citation omitted.) *French v. State*, 288 Ga. App. 775, 776 (2) (655 SE2d 224) (2007).

On the first day of trial, Picklesimer moved for a continuance to investigate a subsequent allegation of improper touching made by S. P. against her mother's live-in boyfriend. Although the trial court denied the motion, and initially refused Picklesimer's request to question S. P. about the allegation, S. P. ultimately testified about it. At trial, S. P. testified that she told her mother that her mother's boyfriend touched her inappropriately when he hugged her. S. P. subsequently discussed the incident with the therapist she had been seeing since disclosing Picklesimer's abuse, and she and her therapist decided that nothing improper happened. S. P. and her therapist determined that Picklesimer's abuse caused S. P. to be distrustful of men, and this colored S. P.'s interpretation of the hug.

Pretermitting whether the trial court should have granted a continuance to allow for further investigation into the subsequent allegation, Picklesimer can show no harm in light of S. P.'s testimony admitting the subsequent recanted allegation and her explanation about it. In fact, Picklesimer has made no effort to demonstrate what additional time to investigate would have produced beyond the testimony he elicited from S. P. at trial. See *French*, 288 Ga. App. at 776 (2). Consequently, this enumeration provides no ground for reversal.

8. Lastly, Picklesimer contends that the evidence was insufficient to support his conviction for molesting M. P. by placing her hand on his penis because there was no evidence that he acted intentionally. We disagree.

In her forensic interview, M. P. stated that she believed Picklesimer was sleeping when he made her touch his penis. For this reason, Picklesimer contends that the State failed to demonstrate the requisite intent to convict him.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979)]. As long as there is some competent evidence, even though

22

> contradicted, to support each fact necessary to make out the State's case,
> the jury's verdict will be upheld. Relevant to this case, . . . child
> molestation occurs when a person does any immoral or indecent act to
> or in the presence of or with any child under the age of 16 years with the
> intent to arouse or satisfy the sexual desires of either the child or the
> person. OCGA § 16-6-4 (a) (1).

(Citation and punctuation omitted.) *Watkins v. State*, 336 Ga. App. 145, 146 (1) (784 SE2d 11) (2016).

Here, the jury heard two different accounts of M. P. being molested. M. P. stated that when she was sharing a bed with Picklesimer, he made her touch his penis. During her forensic interview she stated that she believed Picklesimer was sleeping at the time and did not mean to do this; however, at trial she later testified that she did not know whether Picklesimer was asleep. Additionally, Picklesimer admitted in his statement to police that he made M. P. rub his penis after she walked into the bathroom while he was urinating. Pretermitting whether the jury could convict Picklesimer on M. P.'s allegation given her equivocation as to whether he was sleeping, the jury was authorized to believe Picklesimer's statement wherein he admitted intentional conduct which constituted child molestation. See *Branesky v. State*, 262 Ga. App. 33, 34 (1) (584 SE2d 669) (2003) (evidence that defendant made

23

child touch his penis was sufficient to sustain conviction for child molestation). Accordingly, the evidence was sufficient to sustain Picklesimer's conviction for child molestation of M. P.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur*.